## TEXAS EMPLOYERS INS. ASS'N v. BOOTH.

### No. 12580.

Court of Civil Appeals of Texas. Dallas.
Dec. 18, 1937.

Dissenting Opinion Jan. 5, 1938.

Rehearing Denied Jan. 29, 1938.

Head, Dillard, Maxey-Freeman & Mc-Reynolds, of Sherman, for appellant.

Webb & Webb, of Sherman, for appellee.

BOND, Chief Justice.

Gus Booth was an employee of Kimbell Oil Mill, a subscriber, insured by Texas Employers Insurance Association, and this appeal is from the judgment of a district court of Grayson county, upon a verdict of the jury in Booth's favor for $2,615.56, as a lump-sum settlement of compensation for total permanent incapacity.

Booth presented his claim for compensation to the Industrial Accident Board and from a final order appealed to the district court. In the district court, he alleged all the necessary prerequisites to confer juris-

diction on said court; in detail, alleged the nature and extent of his injury and its resultant consequence—permanent and total incapacity to labor within the meaning of the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., and, in the alternative, partial incapacity.

The defendant interposed a plea to the jurisdiction of the trial court and alternative plea in bar, containing a general demurrer and special exceptions, general denial, and special answer. The plea to the jurisdiction was presented, evidence introduced, and it was overruled by the trial court. The general demurrer and special exception also aimed at plaintiff's allegations relative to the jurisdiction of the trial court and were also overruled. We think the trial court correctly overruled the demurrer and exceptions, but erred in overruling the plea to the jurisdiction.

Plaintiff's petition alleged a cause of action fully within the jurisdictional amount of the district court and specifically alleged that the claim was duly presented to the Industrial Accident Board. Thus, as against general demurrer and exceptions, the petition must be considered as true. However, defendant's plea to the jurisdiction and proof presents the question in a manner as to challenge the correctness of the allegations; and, we think, the proof is conclusive that the preliminary prerequisites to confer jurisdiction on the district court are not present.

Defendant's plea to the jurisdiction is based on the failure of the claimant to present before the Industrial Accident Board a claim for compensation showing an amount within the jurisdiction of the district court. The claim filed with the board, deleting and omitting strictly formal and immaterial matters, is as follows: "That he (Gus Booth) claimed compensation under the Employers' Liability Act for personal injuries suffered while in the course of his employment with Kimbell Oil Mill, at Sherman, Texas; that the time of his injury was about 5:30 o'clock, a. m. on or about the 26th day of December, 1934; that the place of his injury was in the press-room of the oil mill; that the cause of injury was: He and several other employees were trying to lift a piston out of a press, raising it by means of a pipe fastened to the piston, the pipe breaking loose from the piston in some way, the place where the defendant was standing being slicked with oil, threw him into a twisted

234

position and jerked him; that the part of his body injured and the nature and extent of the injury was: he strained and sprained his back and sides and received a hernia, which appeared suddenly, causing intense pain and nausea; that he had never before had the hernia in any degree; that the injury did not result in loss by amputation of a member of part of his body; that his rate of pay on the date of the injury was 30¢ per hour; that the hours worked per day were six; that the days worked per week were an average of five; that the length of time regularly employed in same employment for said employer previous to this injury was about three or four months; that the names and post-office addresses of all witnesses in support of said claim for compensation are: Mr. Gilliam, the night man, and several other employes, whose names plaintiff did not know but could get later; that the days lost from work at the time said claim for compensation was made were about ninety; that plaintiff is a citizen of the United States; that he was not furnished medical attention when injured, but went of his own accord to Dr. H. L. Brown, at Sherman, Texas." The said claim for compensation was filed by the plaintiff, Gus Booth, witnessed by Ruth Bolton, and received by said board on March 18, 1935.

■ Following the introduction in evidence of the above claim, plaintiff offered in evidence, over the objection of the defendant, a written statement of the claimant before the Industrial Accident Board, and notice of injury, which was served on the insurance company and the subscriber. While the statement and notice were improperly admitted, immaterial, and without probative force, yet they evidenced no jurisdictional data as to aid the issue involved here. In substance, the statement and notice only recite the facts as set out in the claim.

■ Obviously, it will be seen that the claim presented by plaintiff to the Accident Board was not in an amount as much as $500, which is the least amount necessary to confer jurisdiction in the district court; and, no data or any enumerated injury alleged that the amount of compensation allowable by the provisions of the Workmen's Compensation Law, article 8306 et seq., Rev.St.1925, as amended, Vernon's Ann.Civ.St. art. 8306 et seq., could be calculated as to present a claim amounting to as much as $500. The claim for in-

jury to plaintiff's back and sides and the production of a hernia are not such compensable injuries as are allowable under the Compensation Law, unless the resultant consequence is such as to disable the claimant from performing the usual task of a workman, and then, too, the amount of such compensation is determinable by the Compensation Law upon whether the disability is permanent or temporary, total or partial. The amount of the claim before the Industrial Accident Board and the county in which the injury occurred determine the "court of competent jurisdiction" to which an appeal lies. To invoke the jurisdiction of the court, it was incumbent upon the claimant to disclose in his claim, among other essentials, the county in which the injury occurred and the amount of his claim, or sufficient data from which the amount may be calculated under the provisions of the law. In the absence of such showing, an aggrieved party, other than the injured party, would have no means to know the nature and extent of the claimant's injury, or the amount of his claim, or the place where the injury occurred as to enable such party to perfect an appeal to the court having jurisdiction of the claim. It will be seen that without such information disclosed in the claim before the Accident Board, such an aggrieved party to the action may hazard an appeal to a court which, in fact, had no jurisdiction. Illustrating the point: Suppose the Industrial Accident Board should award to a claimant an amount under $500 and the insurance carrier, or subscriber, was dissatisfied with the award and desired to appeal; manifestly, in the absence of a showing as to the nature and extent of the claim and the resultant consequence, and the place of injury, such party would not know to what forum the cause of action is determinable. Jurisdictional averments are an integral and necessary part of the claimant's case, and must be invoked by an appropriate proceeding before the Industrial Accident Board, without which there is no cause of action. Mingus v. Wadley et al., 115 Tex. 551, 285 S.W. 1084.

In case of Commercial Standard Ins. Co. v. Robinson, et al., 91 S.W.2d 1147, the Fort Worth Court of Civil Appeals had before it a very similar question, and, in an able opinion by Chief Justice Dunklin, reviewing the many authorities bearing on the question, held that a suit to set aside compensation award, where claim was filed

with Industrial Accident Board contained no allegation indicating jurisdictional amount, was dismissible for lack of jurisdiction, since the amount in controversy was determinable by allegations in the claim. In the course of the discussion, the opinion of the Commission of Appeals in the case of Beal v. Texas Indemnity Ins. Co., 55 S.W.2d 801, 802, was quoted, which is as follows:

"When a party is dissatisfied with an award of the Industrial Accident Board, he may, by compliance with the terms of the Workmen's Compensation Act, bring a suit to set aside the award. Such suit must be brought in a court of competent jurisdiction. The amount claimed before the Industrial Accident Board, and not the amount awarded, is determinative of the proper court in which the suit must be brought.

"The burden rests upon the party bringing such suit to show that the court in which the suit is filed has jurisdiction of the action. Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084. He may do this by attaching to and making a part of his petition a certified copy of the award of the Industrial Accident Board, provided such award discloses the amount involved in the claim made before the board. Or he may set forth by direct allegations in his petition that the amount claimed by him before the board was a sum within the jurisdiction of the court in which the suit is brought. But it is not absolutely essential, in order to show jurisdiction, that the amount of the claim before the board be alleged in actual dollars and cents. It is sufficient if it be shown that the claim for compensation before the board was for an injury for which the Compensation Law fixes a period of compensation which, when multiplied by the average weekly wage of the claimant, would result in a sum within the jurisdiction of the court in which the suit is brought. Travelers' Ins. Co. v. Peters (Tex.Com.App.) 17 S.W.2d 457."

In the cited case of Travelers' Ins. Co. v. Peters, supra, Judge Leddy, speaking for the Commission of Appeals, held as against a general demurrer, that plaintiff's petition before the district court alleging the amount of the claim before the Industrial Accident Board was "in accordance with the law" for the death of the employee, shows that the claim was within the jurisdictional amount of the district court and, in effect, holds that claims before the board should show jurisdictional data. Accordingly, we are of the opinion in the instant case that appellant's plea to the jurisdiction should have been sustained.

■ On the issue of total permanent incapacity, we think the evidence is insufficient to support the jury's verdict. Appellee's case rests upon testimony that, on December 26, 1934, while helping to pull a piston from a cotton-seed oil press belonging to Kimbell Oil Mill at Sherman, Tex., the hoisting device, a chain attached to the piston, slipped off, causing appellee's feet to slip from under him, twisting and jerking his body, and violently falling on his hands and knees. He was injured— his back and muscles strained and twisted, and an indirect inguinal hernia suddenly appeared. There were no bones broken or fractured, no lacerations of the skin or flesh, and no impingement of the nerves or blood vessels occasioned by the fall.

The evidence shows that appellee suffered pain and has continued to suffer since said occurrence, and, according to his testimony, he has been unable to work without suffering severe pain and ofttimes illness, and has been unable to do a full day's work without rest intervals. At the time of the occurrence, appellee stated that he told the night superintendent of the mill, a Mr. Gilliam, that the fall "like to have jerked him in two and that it hurt him." Appellee further testified: "I was sick at my stomach, getting sick, and I went on into the boiler room. I wanted to vomit but did not. I had pains in my back and side and in my groin. It hurt pretty bad. It was about an hour and a half before my quitting time. During that time I sat around and waited for them to get ready to start the mill. I suffered pain during that time. I went home at seven o'clock. After reaching home I noticed a knot just a little above my groin. It was a protrusion about half the size of an ordinary hen egg. It was about the size of a half dollar at the start. It was sore where the knot was; I had pain in the area of the knot and in my back and side. I did not go to see a doctor about it. This took place on the day after Christmas, December 26th. I went to a doctor the first of March, or something like that. I didn't go to a doctor because I wanted to report for work and hold my position and work on. I knew if I went

to see a doctor he would probably take me out of service, and I wanted to work on and hold my job."

Plaintiff further testified: "I worked every day except when they wouldn't be running, or would break down. I continued to work after that until about the first of February, doing the same kind of work I had been doing. I laid off about the first week in February, at the end of the crushing season. I went to see the doctor about the first of March, because I was getting worse. The place in my groin kept getting larger, and I just had to. I never had protrusion or hernia before that time. The hernia is bigger now than it was, being on my feet for any length of time gives me pain. The only relief I can get is when I am sitting down or lying down. I have tried to work since I was injured. I did not make application to the mill for any work after that. I was getting worse from the time I received the injury until I went to see Dr. Brown. I kept working. The place (protrusion) was getting larger all the time."

Plaintiff further testified: "That since February 8, 1935, I worked on some houses they were building at the CCC Camp, in southeast Sherman; that was carpenter work. I worked about a week and got sick; Dr. Gleckler treated me. I was sick 5 or 6 days, then went back to work at the CCC Camp. I worked two and a fraction days. The job was then over. I also did a little floor patching and put in some windows for other people. I patched some floors for Mrs. Blair, put in some windows for Mrs. Storey, did some work for Joe Becker—made some display tables for him. I painted the inside of Mrs. Sander's house, about 8 or 10 feet wide and 16 feet long. I patched a roof, by putting on some shingles. I put in some window lights for Mrs. Sanders. I went to work for a railroad at Greenville, on September 23, 1936. Before that, I worked on a school building at Tom Bean. While working for the railroad out of Greenville, I was running an engine to McKinney and back. I made two trips to McKinney and back. I quit the first or second of October. I didn't run an engine all the time; I sat around the hotel about a month. I was paid $106.71 for the work I did for the railroad. I was operating a freight train, did switching work, made up trains and picked up cars. I drove the engine 32 miles from Greenville to McKinney and 32 miles back—made two trips. I spent 160 miles in the cab as an engineer, and for that I was paid $106. In addition to that, they gave me food and a place to sleep. I just sat in the cab and gave the engine steam and went along the road; if they were switching, I would throw the engine in back motion, give it steam, that was all. To give steam, I operated the throttle, which required 10 or 15 pounds of pressure. I didn't do anything at all in the way of lifting. I oiled the engine, which was done by walking around with an oil can and putting the oil in the proper places. That operation requires no effort. Applying steam to the locomotive required no back energy at all. I went down there to work because I thought I could do what those fellows required me to do, and see if I couldn't find a little work for my family, we had to have something to eat. At the time I was injured, I weighed about 220 pounds, maybe a little more. My weight now is 195 pounds."

In support of appellee's testimony, other witnesses testified to the effect that Booth's appearance before and after the alleged occurrence showed radical changes: That he appeared before the occurrence to be active, strong, in good health, and free from pain; and, after the occurrence, apparently lost weight, inactive, weak, and in poor health. Mrs. Booth, wife of appellee, also testified that her husband came home on the morning of the accident, told her about his hurt, and she then observed that there was a small swelling in his groin, and that he complained of pain in his back and side. She described his appearance before and after the occurrence pretty much as testified to by the other witnesses, and corroborated her husband's testimony as to his inability to work and retain employment.

Other supporting testimony was that of Dr. J. A. Swafford, whose testimony appears in the record in question and answer form and, reduced to narrative, is as follows: "I saw and examined Mr. Booth in the year 1935. I had seen him several times and had treated him. He had a stiff, sore back, complained of his back being sore and stiff. Upon physical examination, his back was apparently stiff and rigid and he had a hernia on one side —an inguinal hernia, almost as large as a goose egg. X-ray examination did not show any bone injury, but the fifth lumbar vertebra was either eroded or malformed. This bore out the finding that his spine

was stiff and rigid. The stiffness might have been due to a diseased condition or a weakened condition, and the injury could go in with it. I don't think the spinal condition could have been due to the injury alone. I would attribute it to the injury and to the disease following the condition. The muscles in the small of his back were rigid on palpation and examination. I examined the muscles of his side, on the left side, the muscles above the hernia were tense and rigid. I told him to avoid all exertion and protect himself. That is all the treatment indicated except an operation for hernia which he did not want. There were only two things indicated, either operation or absolute rest. He put on a truss for the hernia. Hernia operation is a major one. The chances for recovery for hernia are good, although he has not the same chances that a younger person would have. There isn't very much chance for serious results. There is a small element for success not being so good in a man of his age as in a younger man."

Dr. Swafford further testified that: "The condition in his back is permanent. Nature will take care of it so it will not be so painful, but it will be stiff. There is a permanent alteration that will not be changed. Labor will produce pain to Mr. Booth, and it will be injurious to try to labor with that hernia. He would have pain in his back if he should work. It is quite a bit larger now than when I saw it; it will increase in size. The hernia is hard, tense and tight. I have never had a patient quit work on account of hernia. This hernia would not prevent Mr. Booth from doing his carpenter work. I don't think it would keep him from working on a railroad engine. Hernia is more or less a disability, but he could do carpenter work. I doubt if he could make a locomotive fireman, but he might be able to make an engineer. I do not think the muscles in the region of the hernia are still tense. Putting on a truss will relieve the tenseness of the muscles and allow them to become normal. The muscles are normal now. There is no indication of bone injury, but, I think that the back injury was either a malformation or erosion of the fifth lumbar vertebra. It might be caused either by infection or from disease. The bone does not show any arthritis, it might become calcified and the lime deposits around that area might become ankylosed. I do not find a calcified condition. There is still stiffness in the back,

it is not of such character as to prevent him laboring. It does not prevent him from working entirely."

The foregoing presents all the evidence most favorable to appellee, and from such evidence, we are of the opinion that the injuries appellee sustained are not sufficient as to permanently and totally disable him from performing the usual task of a workman in such way as to prevent him from procuring and retaining employment. The nature of the occurrence and the extent of appellee's injury, coupled with the fact that he thereafter continued to work at the mill in his usual and customary employment until the close of the season and that, too, without consulting a physician or making complaint of hurt or pain to any of his co-workers in the mill; and, thereafter worked at various jobs, including the work of a railroad engineer and the work of a mechanic, for which the evidence shows he was paid $272. This, we think, negatives the findings that he was totally and permanently incapacitated from performing the usual task of a workman.

We are aware that it is the duty of courts to affirm the verdict of juries where the issues have affirmative evidence of sufficient cogency to support the findings. Standard Acc. Ins. Co. v. Williams, Tex.Com.App., 14 S.W.2d 1015. So, in that light and considering only the evidence of appellee favorable to the issue and wholly disregarding all defensive evidence, we are of the opinion the jury's findings of total, permanent incapacity are without support in the record and against the evidence.

Appellant further contends that the trial court erred in rendering judgment in appellee's favor, because of the absence of notice of injury to the employer, Kimbell Oil Mill, or the defendant, within 30 days next succeeding the alleged injury. We overrule this contention. Giving full weight to the testimony of the plaintiff, he testified that the superintendent of the mill, Mr. Gilliam, was present at the time of the injury, and that he told Mr. Gilliam "it like to have jerked me in two"; that "it hurt me." Then, on another occasion, two or three days later, he and Gilliam were taking lunch together, and said, "I spoke to him about feeling awful sore," and I said, "I got hurt doing it, but he never said anything."

**238**

When the employer has actual notice of the accident which caused hurt or injury to the employee, the statute, article 8307, § 4a, and the authorities of this state do not require further notice in support of his claim for compensation, nor is the injured employee required to give notice of the nature and extent of his injuries and the resultant consequence. Informal notice of the injury within thirty days and claim for compensation within six months is sufficient compliance with the statute. Texas Employers' Ins. Ass'n v. Fricker et al., Tex.Civ.App., 16 S.W.2d 390; Texas Employers' Ins. Ass'n v. Tabor, Tex.Civ.App., 274 S.W. 309; Texas Indemnity Ins. Co. v. Bridges, Tex.Civ. App., 52 S.W.2d 1075.

In the expressed view we have taken, the judgment of the trial court is reversed, appellant's plea to the jurisdiction is here sustained, and the suit ordered dismissed for lack of jurisdiction in the trial court.

LOONEY, Justice (dissenting).

This case arose under the Workmen's Compensation Law. Gus Booth, appellee, presented his claim for compensation to the Industrial Accident Board, and, being dissatisfied with its award, brought suit in the district court to set same aside. The Texas Employers Insurance Association, the insurance carrier, among other defenses, urged a plea to the jurisdiction of the court, which was overruled, but, on appeal, was sustained by a majority decision of this court and the cause was dismissed. I dissented from the decision of the majority in this respect, and will briefly state my reasons for so doing.

The contention of appellant, in support of its plea to the jurisdiction of the court, and the reasoning that impelled the majority to sustain same, are set forth in the majority opinion as follows: they say that "defendant's plea to the jurisdiction is based on the failure of the claimant to present before the Industrial Accident Board a claim for compensation showing an amount within the jurisdiction of the district court." Commenting, the majority say: "Obviously, it will be seen that the claim presented by plaintiff to the Accident Board was not in an amount as much as $500, which is the least amount necessary to confer jurisdiction in the district court; and, no data or any enumerated injury alleged that the amount of compensation allowable by the provisions of the Workmen's Compensation Law, article 8306 et seq. Rev.St.1925, as amended, Vernon's Ann.Civ.St. art. 8306 et seq., could be calculated as to present a claim amounting to as much as $500. The claim for injury to plaintiff's back and sides and the production of a hernia are not such compensable injuries as are allowable under the compensation law, unless the resultant consequence is such as to disable the claimant from performing the usual task of a workman, and then, too, the amount of such compensation is determinable by the compensation law upon whether the disability is permanent or temporary, total or partial. The amount of the claim before the Industrial Accident Board and the county in which the injury occurred determine the 'court of competent jurisdiction' to which an appeal lies. To invoke the jurisdiction of the court, it was incumbent upon the claimant to disclose in his claim, among other essentials, the county in which the injury occurred and the amount of his claim, or sufficient data from which the amount may be calculated under the provisions of the law. In the absence of such showing, an aggrieved party, other than the injured party, would have no means to know the nature and extent of the claimant's injury, or the amount of his claim, or the place where the injury occurred as to enable such party to perfect an appeal to the court having jurisdiction of the claim."

It is apparent from this excerpt that the majority concluded that the claim for compensation before the board was based upon injuries that, as a matter of law, were not compensable in an amount within the jurisdiction of the district court. From this view of the matter, I dissent.

I think the claim for compensation presented to the board was broad enough to admit proof of damages proximately resulting from the alleged injuries, in an amount within the jurisdiction of the district court. The board is not a court, but an administrative body, possessing only the powers conferred by statute. Commercial Cas. Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 89 S.W.2d 1116; Traders & General Ins. Co. v. Chancellor, Tex.Civ. App., 105 S.W.2d 720, 723. Its proceedings are informal; the statute refers to the claim for compensation in general terms; no requisites therefor are prescribed, as in the case of pleadings; hence, the claim is not a pleading, as that term is

generally understood. When a claim for compensation is filed, complaining of an injury or personal injury, as in the instant case, necessarily there is written into it the language of section 1, art. 8309, as follows: "the terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

The controversy only assumed the form of a lawsuit, and was controlled by the rules of pleading and practice, when the petition was filed in court to set aside the award of the board. The only essential jurisdictional connection between the claim for compensation before the board, and the suit to set aside its award, was the identity of the injury or injuries complained of. If the injury or injuries complained of before the board and those set up in the petition filed in court are the same, the claim for damages may be enlarged in the suit; that is, elements of damages proximately resulting from the injury or injuries, but not urged before the board, may be alleged in the petition filed in court to set aside the award. The doctrines above announced are well settled by decisions. In Indemnity Ins. Co. v. Harris, 53 S.W.2d 631, 633, Judge Walker, speaking for the Beaumont Court of Civil Appeals, said: "Before the Industrial Accident Board appellee based his claim on 'an injury to my spine and leg injury.' By his petition herein, in addition to the injury claimed before the board, he also claimed 'an injury to the sacroiliac joint.' On the ground that the Industrial Accident Board was not called upon to adjudicate an injury to the 'sacroiliac joint,' appellant insists that appellee was not entitled to plead nor offer evidence to the jury of this additional injury. This contention is overruled. Appellee's injury belonged to that class of compensable injuries where the amount of compensation is based upon incapacity to work or labor resulting therefrom, and did not fall within the class of specific injuries where the amount of compensation is based upon the nature of the injury. For the class of injuries of the nature involved in this case a general description such as made by appellee in his claim before the Industrial Accident Board is sufficient, and upon appeal to the courts may be enlarged to include all injuries proximately resulting from the accident complained of. Texas Employers' Ins. Co.

v. Knouff, Tex.Civ.App., 271 S.W. 633, and authorities therein cited; Texas Indemnity Ins. Co. v. Wilson, Tex.Civ.App., 281 S.W. 289; Texas Emp. Ins. Ass'n v. Perry, Tex.Civ.App., 35 S.W.2d 1087." This decision was referred to and approved by the Supreme Court in Hartford Acc. & Indem. Ins. Co. v. Choate, 126 Tex. 368, 89 S.W.2d 205, 207. To the same effect, see Miller v. Texas Emp. Ins. Ass'n, Tex. Civ.App., 63 S.W.2d 883, 884, and authorities cited; Texas Indemnity Ins. Co. v. White, Tex.Civ.App., 37 S.W.2d 277, citing Aetna Life Ins. Co. v. Bulgier, Tex. Civ.App., 19 S.W.2d 821, by this court. Also see Consolidated Underwriters Co. v. Hubbard, 107 S.W.2d 908, by the Beaumont Court of Civil Appeals, also holding that the essential jurisdictional fact to maintain an appeal from an award of the Industrial Accident Board is the identity of the injuries on which the claim for compensation before the board was based.

So, we reach this question: Were the injuries described in the claim for compensation before the board, and those alleged in the petition filed in the district court, substantially identical? I am of opinion they were. The facts connected with the accident—that is, its date, place of occurrence, the how of the accident, wages being earned, hours and days of labor, etc.—as set forth in the claim before the board and in the petition filed in court, are in substantial accord; no question was raised claiming any variance in either of these respects. Omitting immaterial matters, the alleged injuries are described in the claim before the board as follows: "That he (Gus Booth) claimed compensation under the Employers Liability Act for personal injuries suffered while in the course of his employment with Kimball Oil Mill at Sherman, Texas; * * * that the part of his body injured and the nature and extent of the injury was: he strained and sprained his back and sides and received a hernia, which appeared suddenly, causing intense pain and nausea."

In regard to the hernia, nothing appearing except that it was received, clearly appellee was entitled to have it considered for compensation under the general provisions of the statute; under the allegations of back and side injuries, enlarged by the provisions of section 1, art. 8309, appellee was entitled to make proof before the board of all damages proximately resulting to the physical structure of the in-

jured parts—that is, of injuries to the spinal column, nerves, blood vessels, tissues, tendons, muscles, ligaments, etc., in the region of or connected with the parts injured, and authorized the board, if supported by competent evidence, to find that appellee suffered either total permanent incapacity, or incapacity of a lesser degree, and to award compensation accordingly; in other words, the injuries described in the claim before the board were of a nature and magnitude, if sustained by proof, to have authorized the board to allow compensation in an amount clearly within the exclusive jurisdiction of the district court.

It is not denied that appellee's petition alleged a cause of action within the jurisdiction of the district court. The injuries alleged therein substantially are identical with the injuries described in the claim before the board—that is, when the claim before the board is enlarged by writing into the language of section 1 of article 8309. The petition described the injuries as follows: "That all the bones, nerves, blood vessels, tissues, tendons, muscles, ligaments and cartilages in and about his back, sides, spine, spinal cord, spinal column, and vertebrae were bruised, mashed, broken, dislocated, twisted, torn, jammed and otherwise injured. That he also received a hernia, which appeared suddenly, causing and accompanied by intense pain and nausea. That said hernia had never existed in any degree before. That by reason of said injuries, plaintiff has been totally incapacitated to labor within the meaning of the Workmen's Compensation Law, and such total incapacity was and is permanent. In the alternative, and in the alternative only, plaintiff alleges that he has suffered by reason of said injuries total temporary incapacity to labor; total temporary and partial permanent; permanent partial incapacity to labor and temporary partial incapacity to labor."

Having reached the conclusion that both the claim urged before the board and the amount sued for were based upon identical injuries, within the jurisdiction of the district court, I therefore believe the majority erred in holding to the contrary and in sustaining the plea to the jurisdiction. I think the plea should have been overruled, but am in accord with the view that the evidence did not authorize the jury's finding of total permanent incapacity, therefore, think the court should have reversed the judgment of the trial court and remanded the case for further proceedings.

## On Motion for Rehearing.

BOND, Chief Justice.

The Workmen's Compensation Law makes suitable provisions for payment of compensation for personal injuries sustained by an employee in the course of his employment, enumerating various specific injuries, from which incapacity to work is conclusively held to be total and permanent and the amount of compensation definitely fixed. For total incapacity, however, resulting from injuries not enumerated, compensation is allowable to an amount equal to sixty per cent of the employee's average weekly wages, but not more than $20 nor less than $7, for a period of not greater than 401 weeks; and, in case the disability is partial, equal to 60 per cent. of the difference between his average weekly wages before the injury and his average weekly wage-earning capacity during the existence of such partial incapacity not to exceed $20 per week and not to exceed 300 weeks. The law further provides, article 8307, § 4a, that: "No proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

In the case of J. W. Mingus, Receiver v. Helen Florence Wadley et al., 115 Tex. 551, 285 S.W. 1084, 1087, Chief Justice Cureton, speaking for our Supreme Court, said: "The Workmen's Compensation Act having created the rights to be enforced and provided the remedy therefor, each step in the progress of the maturity of a claim from the time of the injury to its final adjudication is a mandatory requirement, necessary to the exercise of jurisdiction by the first and succeeding statutory agencies [citing numerous authorities]." And further stated that: "Suits to set aside awards are analogous to appeals from trial courts to Courts of Civil Appeals."

 The claim under consideration not being one of the enumerated classes of injuries which the law designates as permanent total incapacity, we think, in failing to state whether such injury resulted in permanent or temporary, total or partial incapacity, is fatal to the exercise of jurisdiction by the Industrial Accident Board as well as the court to which the appeal was taken. "A claim for compensation with respect to injury," as demanded by the statute, is one for which an amount of compensation may be deducible from facts alleged. A wide distinction is made as to "notice of injury" and "claim for compensation." A notice of injury is directed to the subscriber, or insurance carrier, advising of the happening of the injury, and is to be given within thirty days; whilst, a "claim for compensation" is directed to be filed with the Industrial Accident Board within six months. "A claim for compensation" means money allowance, payable to the injured party or his legal representatives. So, where a claim does not state either an amount of money or give some data by which an amount can be calculated, it is not a claim for compensation within the contemplation of the law. The act discloses a legislative intent that the "claim for compensation," being a prerequisite of the right to sue on appeal, shall be a claim for money or data by which an amount of money may be ascertained. A mere notice to the board that the claimant sustained a general injury to the body, without stating the duration of disability or failing to give sufficient data from which an amount could be ascertained, is not, in our opinion, a "claim for compensation." Evidently, the Legislature, in fixing the period at six months after the injury for the filing of a claim for compensation with the board, was to grant sufficient time to the development of the result to the point that a state of facts exists which makes compensation due.

 While the law does not prescribe any particular form for a claim for compensation, yet, a claim for money should embody the necessary essentials by which an amount may be found, showing: (1) That it is based on resultant injury for which compensation is allowable under the law; (2) that the injuries were received in a certain county, naming the county; (3) that the claimant's disability, if not one of the enumerated injuries conclusively total and permanent, is, in fact, permanent or temporary, total or partial; and (4) the claimant's average weekly wages, or such data that the amount might be ascertained by calculation.

 In the Mingus-Wadley Case, supra, a claim which failed to state the county of the injury was held to be fatal to the exercise of jurisdiction on the trial court; and, we think, with equally good reason, a claim for compensation which does not state the claimant's average weekly wage, or some data by which it may be calculated, or a claim, as in the instant case, which does not show the extent of the injury, that is, whether the disability arising therefrom was total or partial, permanent or temporary, or some data by which compensation could be reasonably calculated, is fatal to the jurisdiction of the trial court. If "suits to set aside awards are analogous to appeals from trial courts to Courts of Civil Appeals," it could hardly be said that a suit for damages in a trial court which was lacking in pleadings to show jurisdiction of the trial court, would confer jurisdiction upon the Court of Civil Appeals. It is elemental that jurisdictional amount of a claim must be shown in the trial court, else the Court of Civil Appeals has no jurisdiction of the appeal. Thus, we adhere to the conclusion that the filing of a mere notice of injury or the happening of occurrence, without the filing of a "claim for compensation," does not invoke the jurisdiction of the first or succeeding statutory agencies, as provided by the Workmen's Compensation Law. The amount of the claim filed with the board determines the jurisdiction of the court to which an appeal or suit to set aside the award lies.

Appellee's motion for rehearing is overruled.

LOONEY, J., dissents.