### TEXAS EMPLOYERS' INS. ASS'N v. MORAN.

No. 3030.

Court of Civil Appeals of Texas. Eastland.

Oct. 2, 1953.

Rehearing Denied Nov. 6, 1953.

856

McMahon, Springer, Smart & Walter, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

GRISSOM, Chief Justice.

■ In a Workmen's Compensation case the employee recovered judgment for total and permanent disability and the insurance carrier appealed. Appellant's first point is that the court erred in rendering such judgment because the evidence was insufficient to support the finding that Moran was totally and permanently incapacitated. Its second point is that "the court erred in rendering judgment for plaintiff, because the jury's finding of total and permanent incapacity to labor was so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust." (It has been said that said points are materially different. Houston Printing Co. v. Jones, Tex.Civ.App., 282 S.W. 854, 857, W.D. See also In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 662; 30 Tex.Law Rev. 803, 809; Shaw v. Centerfield Oil Co., Tex.Civ.App., 10 S.W.2d 144, 146; Missouri Pac. Ry. Co. v. Somers, 78 Tex. 439, 441, 14 S.W. 779. However, that question is not presented and we do not decide it). The trial court defined total incapacity as follows: "The term 'total incapacity' as used herein does not imply absolute disability to perform any kind of labor, but a person physically disabled to such an extent or degree that he cannot perform the usual task of a workman in such a manner as to be able to procure and retain employment." This is an approved definition. Texas Employers' Ins. Ass'n v. Ray, Tex. Civ.App., 68 S.W.2d 290, 291, W.R.; Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000, 1001.

In King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661, our Supreme Court held that the rules (1) that if there is any evidence of probative force to support a jury finding it is binding on both the trial and appellate courts; (2) that a court of civil appeals will look only to the evidence favorable to the verdict, and (3) that if reasonable minds can differ the verdict will be upheld, apply only to the question of whether the evidence as a matter of law requires a contrary conclusion and said three rules are not applicable to the question of whether a verdict is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. It said, relative to a point presenting the contention that a jury finding was so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, that

"The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. * * The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." See also Judge Garwood's discussion of the question in 30 Tex.Law Rev. 803, 807.

Applying the trial court's definition of total incapacity to all the evidence we are required to decide whether the finding that

Moran, on April 15, 1951, sustained an injury which from that day for 401 weeks, caused him to be totally "disabled to such an extent—that he cannot perform the usual task of a workman in such a manner as to be able to procure and retain employment" is so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust.

Moran testified he was hurt on April 15, 1951; that he was then working for Sta-Mex Oil Company; that, in addition to his work as a driller for Sta-Mex, he had a business of his own, a well servicing machine, a clean-out rig, a welding outfit and a truck that he used to haul water and oil; that he could not work steadily as a driller and when not employed as a driller, and at some times when he could have been so employed, he was out getting welding, hauling or "clean-out" work, or doing that kind of work. Evidence as to what Moran did prior to his injury was introduced for the purpose of showing his then physical condition and as bearing on his ability to labor and earn money. As to how he was injured he testified, in effect, that he was pushing hard on a wooden handle; that the joints he was trying to unfasten suddenly came loose so there was no resistance to his push and, being in an awkward position, he twisted his back. He did not fall and nothing struck him. This was April 15, 1951. He filed his claim for compensation in September, 1951. Moran testified that he did not continue with his work "immediately" after he twisted his back; that he went to the dog-house and "squirmed around" and waited ten or fifteen minutes before he went back to work; that he finished the tower; that he did not realize the seriousness of his injury; that he continued working for eight or nine days; that he did not feel like working but "they were short handed;" that they were working twelve to sixteen hours a day trying to finish a well and he worked because they did not have any more hands available; that they got the well down to the casing point "which is almost finished, when I left." That before his injury he had told his employer he would quit at that stage; that he worked eight or nine days after his injury and then went to see a doctor in Big Spring who X-rayed his back but did not treat him; that he saw this doctor once a week for five or six weeks; that the insurance company sent him to Dr. Hodges, a bone specialist; that Hodges X-rayed his back, had him strip and bend his back in all directions so that he could see and feel what happened in his back; that he saw Hodges one time; that he did not treat him; that later he went to see Dr. Snow, who X-rayed his back and checked it, having him move in all directions; that he went to see him a "number" of times; that he treated him and gave him temporary relief.

Moran testified that he went to work as a welder for Superior Oil Company on November 5, 1951; that from April 15th to November 5, 1951, which lacks one week of being seven months, he did not work because he was not able; that during said seven months period his pulling machine was busy part of the time and he did oversee part of it but had others do the manual labor. He admitted working as a driller eight or nine days after he hurt his back and it is undisputed that he sold gas and oil at a filling station for about ten days during this seven months period. Moran testified that he started to work as a welder for Superior Oil Company, although he was permanently and totally disabled, because:

"A. I find it necessary to work, my family has a habit of eating, I like to eat; and, we have to have clothes, my kids are not finished in school. There are a number of reasons, I guess, why I have to work."

He said he had backaches continuously; that his back is sore all the time. He was asked whether he was actually able to do the welding for Superior. He answered:

"A. I don't think so, I don't see— the fellows that I have to work with, it doesn't affect them like it does me."

There was testimony to the effect that Moran's helper did the heavy lifting for

him and did more for him than helpers did for other welders and that he had a sympathetic foreman.

Dr. Snow testified that in his opinion Moran was totally and permanently disabled as a result of his injury on April 15, 1951.

Dr. Ramsey testified that he gave Moran a complete physical examination; that he did not see any muscle spasm; that in his opinion Moran did not have muscle spasm at that time; that he found no indication of any back trouble; that the X-ray pictures of his back did not show anything that would cause a man to be unable to hold a job requiring manual labor; that he did see some evidence of a light form of arthritis, which was a long standing; that he found no evidence of back injury.

Dr. Hodges examined Mr. Moran for the insurance company on September 13, 1951. He testified that he examined Moran's back and lower extremities; that he found no muscle spasm; that if you have an acute back injury, which is disabling and painful, you would expect to find muscle spasm in the back; that he noted no limitation to Moran's forward bending; that, based on Moran's statements to him, there was fifty percent limitation to his backward bending, arching his back, twenty-five percent limitation of his bending to the right and fifty percent limitation to his bending to the left; that Moran told him that bending, both to the left and right, caused pain to the right of the lower back; that he made X-ray pictures of Moran's back; that from these pictures the only abnormality he found was a spur formation on some of the lumbar verterbrae, which he interpreted to be degenerative deposits from the spine, not from an injury; that these deposits took several years to form; that it is a common condition in men engaged in manual labor who are 40 years of age; that he was not saying there was nothing wrong with Moran, that he was saying he did not find anything.

Dr. Middlebrook testified that he made physical examinations of applicants for employment with Superior Oil Company; that he examined Moran when he applied for work with Superior; that the application signed by Moran called for listing of all injuries or operations, giving the dates, duration and results; that there was no notation made of a back injury; that, after examination, he listed Moran's physical condition as "good," which was the highest possible rating, the ratings being "good, fair and poor." That a man who was rated "good" was able, in his opinion, to do hard manual labor; that his sole purpose in examining Moran was to tell Superior whether he could do hard manual labor. That he did not remember making the examination; that he was not telling the jury there was nothing wrong with Moran but he did not find anything wrong.

■ The evidence might be sufficient to sustain the finding of total disability up to the time Moran went to work for Superior. We recognize the rule that the mere fact that a claimant works and earns money after an injury is, generally, not conclusive on the issue of his capacity to obtain and retain employment. But, we think it is evident from the undisputed facts as to what happened from that time until the trial clearly raise the question presented by appellant's second point. It is undisputed that Moran worked for Superior from November 5, 1951 to the trial, October 6, 1952, a period of eleven months; that he worked every day he was supposed to work, except a period of two weeks when he was off the job because he had then injured a finger; that he did oil field welding; that he did obtain, and retain for eleven months, such employment with a new employer after taking a physical examination as a prerequisite to employment; that he was paid every two weeks; that, with the exception stated, during said eleven months period, he worked overtime every two-week pay period, except possibly two that were not accounted for; that during one week in June, 1952, he worked thirty hours overtime and another week in that month he worked twenty-eight hours overtime; that with the exceptions stated, during said eleven

months, he earned a monthly minimum of $400 and one month he was paid $800. That when he started to work for Superior his pay was $2.20 per hour for the first 40 hours, with "overtime" thereafter; that in March, 1952, his base pay was increased to $2.31 per hour; that in May, 1952, it was raised to $2.39 an hour. Mr. Moran testified that during the eleven months he worked for Superior, except when he hurt his finger, he worked steadily; that he would return to his job the next day after he testified (the day on which he testified being one of his off days, it being his custom to work for ten days and lay off four), and that he expected to continue his work for Superior.

■ To uphold a recovery for total disability throughout the eleven months Moran worked for Superior in the manner indicated is to agree that he was not able to procure and retain employment during that time, including, of course, the two weeks in June, 1952, when he worked fifty-eight hours overtime, and the month he was paid $800 for his work, and despite the facts that seven months after his injury he obtained a job with a new employer, after a physical examination and that his wages were, during said eleven months, three times increased. It is the duty, first, of the trial judge and, second, of a Court of Civil Appeals, to set aside a finding, even though it has support in the evidence, when the verdict is so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660, 661; Missouri Pac. Ry. Co. v. Somers, 78 Tex. 439, 441, 14 S.W. 779; Houston & T. C. Ry. Co. v. Schmidt, 61 Tex. 282, 286; Choate v. San Antonio & Aransas

Pass Railway Company, 91 Tex. 406, 410, 44 S.W. 69; Pacific Indemnity Co. v. Sanders, Tex.Civ.App., 216 S.W.2d 288, 290; Lumbermen's Reciprocal Ass'n v. Wells, Tex.Civ.App., 283 S.W. 208, 210; Employers Reinsurance Corp. v. Wagner, Tex. Civ.App., 250 S.W.2d 420, 423, R.N.R.E.; American General Ins. Co. v. Amerson, Tex.Civ.App., 187 S.W.2d 912, 916, R.W. M.; Texas Employers Ins. Ass'n v. Booth, Tex.Civ.App., 113 S.W.2d 231, 237; 3-B Tex.Jur. 455; O'Fiel v. Redell, Tex.Civ. App., 298 S.W. 142, 144, affirmed, Tex. Com.App., 6 S.W.2d 92; Gulf, C. & S. F. Ry. Co. v. Coffman, Tex.Civ.App., 11 S.W. 2d 631, 636, affirmed, Tex.Com.App., 23 S.W.2d 304; Shaw v. Centerfield Oil Co., Tex.Civ.App., 10 S.W.2d 144, 146. Our duty is more onerous because our decision of this question is final. Having carefully considered all the facts and circumstances of this case we are compelled to hold that the finding that Moran was totally disabled from April 15, 1951 for 401 weeks is unreasonable, and so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and unjust. Therefore, the judgment must be reversed.

Point six asserts error in the manner issue One was submitted. It is evident that the court changed the issue in an attempt to meet appellant's objection and that appellant did not object to it in the form it was finally submitted. Most of appellant's remaining points are relative to alleged errors that need not occur on another trial. However, we think none of them present reversible error and they are overruled.

The judgment is reversed and the cause remanded.