The FIDELITY & CASUALTY COMPANY
OF NEW YORK, Appellant,

v.

Joseph E. BURROWS, Appellee.

No. 14466.

Court of Civil Appeals of Texas.

San Antonio.

May 25, 1966.

Rehearing Denied June 22, 1966.

Groce, Hebdon, Fahey & Smith, Damon Ball, San Antonio, for appellant.

Putman & Putman, San Antonio, for appellee.

MURRAY, Chief Justice.

This is a Workmen's Compensation case. Joseph E. Burrows is the claimant, Braniff Airways, Inc., is the employer, and The Fidelity & Casualty Company of New York is the insurance carrier. The trial was to a jury and resulted in findings of total and permanent incapacity, and a lump sum judgment in favor of Joseph E. Burrows, from which the insurance carrier has prosecuted this appeal.

Appellee was employed by Braniff Airways, Inc., as a cargo serviceman. His duties consisted of loading and unloading airplanes. On April 1, 1964, he and other employees of Braniff were unloading a piece of freight weighing about 700 pounds when he twisted and injured his back. His supervisor sent him to the hospital where he was confined until Saturday, April 4 under the care of a Dr. Nixon. After the doctor examined Burrows in his office on Monday, April 6, the doctor told him he was all right and could go back to work the next day. He tried it for one day but had too much pain in his back, so the next day he went to his family doctor, E. P. McCabe. Under Dr. McCabe, Burrows remained off work until June 1, 1964, at which time he returned to his job wearing a corset, which he has worn ever since. He worked steadily until about June 1, 1965, one week before this trial began, with the exception of three days around October 23, 1964.

Dr. McCabe testified that he was a general practitioner; that he first examined appellee on April 8, 1964, and examined and treated him from then on until July 8, 1964, when he released him from further treatment. On May 22, 1964, he told appellee that he could go back to work; that he should wear a corset and do only light work. He saw appellee again on July 8, and appel-lee told the doctor his back was feeling a great deal better. The doctor saw him again on October 9, 1964, and he told the doctor that with the coming of cool weather he had more stiffness and pain when he exercised. On October 23, appellee returned to the doctor and told him he had another accident and reinjured his back unloading a plane that day or "last Thursday," the doctor was not sure which date. Upon examination the doctor found tenderness and spasm on the right side of the lumbosacral part of the back, whereas on April 8 he had them on the left side of his back. On his initial examination he diagnosed the injury as a low back strain and treated appellee accordingly. During the course of his treatment he arrived at the diagnosis of a herniated or protruded intervertebral disc between the fifth lumbar vertebra and the first sacral vertebra.

The jury found in answer to special issues Nos. 1, 2, 3, 4 and 5, in effect, that appellee sustained an injury on April 1, 1964, while working for Braniff Airways, which caused or contributed to cause incapacity to work beginning April 1, 1964, which incapacity was total and permanent.

■ The evidence set out above is some evidence to support these jury findings.

■ Appellant contends that the jury findings were so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. This contention requires that we consider all of the evidence.

Doctor Newsom Stool, an orthopedic surgeon called by appellant testified that he examined appellee on two occasions, April 17, 1964, and May 3, 1965. The examinations included the review of X-rays taken in September, 1963, April, 1964, and May, 1965. They also included neurological examinations. His diagnosis after the examination in April was low back strain. After his examination in May, 1965, his diagnosis was low back pain without objective damage; meaning no disease or

injury or lack of function that he could determine by examination or X-ray. After his examination of May 3, he was of the opinion that appellee could perform the usual tasks of a working man. He was also of the opinion that appellee did not have a protruding or herniated intervertebral disc. On May 2, 1965, Dr. Stool wrote a letter for appellee in connection with his military duty or reserve training. This letter was addressed "To Whom It May Concern" and stated, in effect, that on April 17, 1964, there were signs and symptoms of a subsiding lumbosacral strain, that all factors pointed to a temporary condition which should subside spontaneously without permanent impairment and he believed that appellee would be able to perform manual labor or military duty as soon as the present episode subsided. Dr. McCabe had appellee examined by Dr. Helfer after the October, 1964, incident. Dr. Helfer did not testify, however, the treatment he prescribed was that which Dr. McCabe had previously prescribed for treatment of a low back strain.

The evidence shows that appellee had a splendid work record with almost no loss of time from June 1, 1964, until June 1, 1965, one week before the trial. He worked at the same job as before his injury. He actually made more money than before the injury, due to a general increase in wages. It is true that two of his fellow workers testified they carried him on the job by taking the heavier packages and leaving him the light ones. Moving pictures were taken and shown of him at work with no apparent handicap. His immediate supervisor did not notice anything wrong with his work. Appellee was a single man, living with his parents. There is no evidence of hardship which would compel him to work in spite of incapacity. In fact, in March, 1965, appellee and his mother took a ten to twelve-day vacation trip to New York and Washington.

■ We feel that the jury's finding that appellee was totally and permanently incapacitated due to his injury of April 1, 1964, is so against the great weight and preponderance of the evidence as to be clearly wrong.

■ The court correctly defined total and permanent incapacity as follows:

"The term, 'total incapacity,' as used in this charge, does not mean an absolute inability to do any kind of work, but means one must be so disabled that he cannot perform the usual tasks of a workman to the extent that he can obtain and retain employment."

It would be wrong to say that appellee cannot obtain and retain employment when he has been doing so since June 1, 1964. It is difficult to find any two cases that are exactly the same, and quite often each workman's compensation case must be decided upon its own peculiar facts, but the following authorities are very persuasive here. Texas General Indemnity Co. v. Hernandez, Tex.Civ.App., 388 S.W.2d 334; Texas Emp. Ins. Ass'n v. Moran, Tex.Civ. App., 261 S.W.2d 855.

■ The jury found in answer to Questions Nos. 16 and 17, in effect, that appellee's present incapacity is caused 100% by his injury of October 23, 1964. This finding is also so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. Inasmuch as the judgment must be reversed as pointed out above, we will not discuss this matter further.

The judgment is reversed and the cause remanded.

CADENA, Justice (dissenting).

I cannot agree with the result reached in the majority opinion.

The medical testimony is in sharp conflict as to the nature and extent of plaintiff's injury. Plaintiff's witness, Dr. McCabe, testified that in his opinion, plaintiff

had a disc protrusion which he described as permanent. Because of this condition, which the witness described as painful and disabling, plaintiff would be unable to do any heavy lifting. If, upon performing a pre-employment physical examination, he found such a condition in the applicant for employment, he would disqualify the applicant from work involving stooping, bending, lifting and carrying heavy weights.

The medical expert who testified for the insurance carrier testified that there was no evidence of a disc injury, and described plaintiff's condition as a subsiding lumbo-sacral strain which would have no significant effect on plaintiff's ability to work.

Where the evidence is in such sharp disagreement as to the nature of the claimant's injury, the conflict must obviously be resolved by the jury. The jury's verdict in this case makes it clear that they accepted the testimony of plaintiff's doctor to the effect that plaintiff was suffering from a protruded disc. Both doctors were in agreement that a man suffering from such condition would be disqualified from doing work which involved stooping, bending, lifting and carrying heavy objects. In this state of the evidence, the jury, if it accepted the diagnosis of Dr. McCabe as being correct, was justified in finding that plaintiff was permanently and totally incapacitated.

The majority opinion relies exclusively on the testimony, which is undisputed, that plaintiff returned to his duties with Braniff and continued to work, without substantial interruptions, until one week before the trial of the case.

Plaintiff testified that he returned to work because he had no other source of income and needed money to pay his bills. When he returned to work he wore a corset brace with metal stiffeners which Dr. McCabe had prescribed. He testified that he was unable to do the work as well as before and suffered from recurring pain. About a week before the case came to trial, according to plaintiff's testimony, the pain in his back was so severe that he was unable to stoop or bend. He consulted Dr. McCabe again, and was told to refrain from working.

One of plaintiff's co-employees testified that, prior to the injury sustained by plaintiff on April 1, 1964, he had never heard plaintiff complain of his back. Since the injury, however, and especially during the six or seven months prior to the trial, he had observed that plaintiff had difficulty in lifting objects. This witness further testified that he and the other workers handled the heavy packages, and arranged among themselves that plaintiff would perform only the "easier jobs."

Another fellow-employee testified substantially to the same effect, adding that plaintiff usually worked in the customs area where it was not necessary for him to handle heavy packages. After the injury of April 1, 1964, plaintiff worked a lot at the ticket counter, which only involved taking bags from a belt and putting them on a cart.

Plaintiff's supervisor testified that a man holding the position held by plaintiff, that of cargo service man, was expected to keep himself in shape to do his normal duties. This witness stated that the work of a cargo man could not be considered light duty, and that if a cargo man could not continue to lift the weights which his work required there would no longer be a job for him.

The standard definition of "total incapacity" in Texas does not require that the injured person be reduced to a condition of complete and abject helplessness, or that there be an absolute disability to perform any kind of labor. A person is totally disabled if he is "disqualified from performing the usual tasks of a workman, in such a way as to enable him to procure and retain employment." Texas Employers' Ins. Ass'n. v. Mallard, 143 Tex. 77, 182 S.W. 2d 1000 (1944).

The law is well settled in this State that an injured employee is not necessarily precluded from recovering workmen's compensation benefits for a period of time in which he was gainfully employed by reason of working and earning wages following the injury. Texas Employers' Ins. Ass'n. v. Cummings, Tex.Civ.App., 364 S.W.2d 255, wr.ref. n.r.e. Nor is continued work after the injury a bar to a finding of total and permanent incapacity. Texas State Highway Dept. v. Kinsler, Tex.Civ.App., 230 S.W.2d 364, wr.ref.; Employers Mutual Liability Ins. Co. of Wis. v. Gallardo, Tex. Civ.App., 359 S.W.2d 933, wr.ref. n.r.e.; Zurich Ins. Co. v. Graham, Tex.Civ.App., 335 S.W.2d 673, wr.ref. n.r.e.; Aetna Casualty & Security Co. v. Depoister, Tex.Civ. App., 393 S.W.2d 822, wr.ref. n.r.e. Such continued employment is merely evidence to be considered by the jury along with other facts and circumstances. Consolidated Casualty Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 906, wr.ref. n.r.e.

In Aetna Casualty Ins. Co. v. Depoister, supra, the medical testimony differed radically, as here, as to the diagnosis and prognosis relative to the condition of the employee, but there was medical evidence supporting the finding of permanent and total incapacity. The insurance carrier there contended that the finding of total and permanent incapacity was without support in the evidence or, in the alternative, that it was so against the greater weight and preponderance of the evidence as to be manifestly unjust and wrong. This contention was based largely, as here, on the fact that since the accident the employee had been employed doing hard physical labor. The employee explained that he returned to work under the spur of necessity. The court held that the finding was not against the great weight and degree of the credible evidence.

In Texas Employers' Ins. Ass'n. v. Price, Tex.Civ.App., 336 S.W.2d 304, no writ, the plaintiff's doctor testified that plaintiff suffered 20% partial permanent disability. The evidence showed that, after the injury,

plaintiff had continued to work until about a month before the trial. However, he testified that he experienced pain while he was working and continued to work only because he had many bills to pay. The jury found that plaintiff was permanently and totally incapacitated. The Court held that there was ample evidence to support the jury's findings. After noting that the testimony of plaintiff's own doctor was inconsistent with the jury finding, the Court said:

"* * * It is the province of the jury, however, to determine the weight to be given evidence and to reconcile conflicts or inconsistencies therein. * * The matter under consideration was not one for experts and skilled witnesses alone. Appellee testified that he could not work without pain, that his back was getting worse, that he was having to wear a brace with which he had previously been fitted by Dr. Brelsford. Dr. Brelsford testified that appellee had sustained permanent incapacity although not total, but that he would not pass him to follow his trade. The fact that appellee's testimony was in conflict with expert opinion testimony concerning the extent of his disability did not, under the circumstances, render it insufficient to support the verdict." 336 S.W.2d at p. 308.

In Texas Employers Ins. Ass'n. v. Smith, Tex.Civ.App., 374 S.W.2d 287, no writ, the Court, after setting out testimony very similar to that which is reflected by the statement of facts in this case, held that there was sufficient evidence to support a finding of permanent and total incapacity, saying:

"The plaintiff in the case at bar has been working almost continuously since returning to work following his operation, and under his own testimony has been doing most of the work required of him, although doing so, in pain. However, it is well settled that the fact a claimant continued to work and earn money since his injury is not controlling on the issue of total and permanent dis-

ability, but it is evidence to be considered with other facts and circumstances before the jury.

* * * * * *

"Also, the Commission of Appeals, wrote in Davies v. Texas Employers Ins. Ass'n., Tex.Com.App., 29 S.W.2d 987:

" '* * * In determining the question of total permanent disability, that determination will not be controlled necessarily by the fact that the injured employee has been able, since the injury, to earn money. While the testimony we have stated tends to show that the employee had not suffered a total incapacity for work, as a proximate result of his injuries, it is not of that nature and character which, as a matter of law, has the legal effect to nullify the testimony which tends to show that he had so suffered. The jury exercised its privilege to decide the issue presented from all the facts in evidence adversely to the defendant in error, and, the verdict being supported by substantial testimony, we are compelled to overrule these assignments.'

"Defendant presents an able argument in support of its position, and relies heavily upon Texas Employers Ins. Ass'n. v. Moran, Tex.Civ.App., 261 S.W.2d 855, and Texas Employers Ins. Ass'n. v. Vineyard, Tex.Civ.App., 316 S.W.2d 156. In each of these cases, the findings of total and permanent disability were found by the Court of Civil Appeals to be against the great weight and preponderance of the evidence. Also, in each of these cases, the plaintiffs had been able to *obtain* as well as *retain* employment. In the present case at bar, the plaintiff had stayed on the job with the same employer, and therefore had not passed a pre-employment examination, and being on the same job, had been able to get those following him on the next shift to perform some of the tasks required of him which he testified he could not do. The testimony of Dr. John Albert Brown that he would not pass the plaintiff for employ-

ment, together with the other testimony, raised an issue for the jury to determine, as to whether the plaintiff was physically able to obtain employment."

The rule relied on by the Courts in the above cases is applicable even where, after the injury, the employee earns more money than he did before the accident. Texas Casualty Ins. Co. v. Beasley, Tex.Civ.App., 381 S.W.2d 236, no wr.; Trinity Universal Ins. Co. v. Scott, Tex.Civ.App., 342 S.W.2d 348, wr.ref. n.r.e., citing numerous authorities.

The films introduced in evidence by defendant were taken on May 5 and 6, 1965, a few weeks prior to the trial. Dr. Stool, who testified for the insurer, stated that it was possible that a person suffering from a protruded or herniated disc would experience periods of remission during which there would be an absence of symptoms such as pain and numbness. However, during periods of exacerbation, the symptoms will recur. This expert testimony is consistent with plaintiff's description of his condition. He stated that on some days the pain was not very severe. There is nothing to indicate that, on the dates when the motion pictures were taken, plaintiff was not enjoying a period of remission.

In addition, the films in question ran only for about thirty minutes. It is thus evident that they depicted plaintiff's activities only during a relatively insignificant period of the two days during which the films were taken. If allowance is made for the film footage which does not show plaintiff at work, the result is that the films show only very brief intervals of the activities of plaintiff. The existence of pain in the subject is not necessarily reflected in motion pictures. Further, the films do not show the aftermath or the results of plaintiff's activities. Under these circumstances, a court is not justified in according conclusive weight to the films in question.

After examining all the testimony, both that supporting the verdict and that militating against it, I cannot agree that the

jury's findings of total and permanent disability are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

After finding that the injury suffered by plaintiff on April 1, 1964, resulted in plaintiff's total and permanent disability, the jury found, in answer to Issues 16 and 17, that an injury sustained by plaintiff on another occasion contributed to plaintiff's incapacity, and that 100% of plaintiff's present incapacity was due to such other injury. There is no evidence in the record supporting such findings, and the trial court properly disregarded them in entering judgment for plaintiff.

I would affirm.