**WESTERN COTTONOIL COMPANY,**
Appellant,

v.

Charles F. ARNOLD et ux., Appellees.

No. 3156.

Court of Civil Appeals of Texas.

Eastland.

April 29, 1955.

Rehearing Denied June 3, 1955.

McMahon, Springer, Smart & Walter, Abilene, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

GRISSOM, Chief Justice.

Charles F. Arnold and wife sued Western Cottonoil Company for damages alleged to have been suffered by reason of odors entering their home from soap stock stored by said company in an earthen pit. The jury found that such storing constituted a nuisance and that the Arnolds were damaged $900. Judgment was rendered on the verdict and said Company has appealed.

Appellant's first point asserts error in the introduction of a sample from the soap pit. We do not think reversible error is shown relative to that point and it is overruled.

Appellant's second point is that the court erred in overruling its motion for a new trial because of the introduction of new evidence by jurors during the deliberation of the jury.

Appellant alleged in its motion for a new trial that the jury received new evidence in the jury room from members of the jury to the effect that some of them had smelled the odor complained of at their homes and another had smelled it at his place of employment and that the odor was so strong and so bad said juror, on several occasions, had to turn off the evaporative coolers to keep the odor from running him out of the house.

Juror Munroe testified he was employed by a funeral home and that he made the following statement to other jurors:

"I said I had to turn off the evaporative coolers lots of nights in there or it would run me out of the house."

Juror Munroe testified that other jurors made statements in the jury room "about like" he did. He further testified:

"A. I believe they just said that it smelled, that they smelled it at home.

\* \* \* \* \* \*

"Q. What did Mr. Boyce Barnard make—what was his statement about that? A. As far as I remember he just said he smelled it at home and asked me if I didn't agree with him, and I told him yes, that I had to turn off the evaporative coolers.

"Q. All right. What did Mr. Hunter say about that? A. I think he said—I wouldn't swear to it, but I think he said he had smelled it at home way up on Cedar or somewhere where he lives."

On cross-examination, juror Munroe testified that there had been testimony on the trial about the stench and he had smelled the jar containing a sample taken from the pit and knew what it was and that nobody had testified on the trial that it did not stink. He testified he was not asked before he was accepted as a juror whether he had smelled that odor; that if he had been asked he would have answered truthfully; that he did not think you could just put off what you knew personally. Thereupon an objection was sustained and he testified that when the first remark was made the foreman said: "Gentlemen, you cannot discuss anything except the evidence that you heard from the witness stand;" that the foreman told them not to consider anything except that and when the first remark was made the foreman stopped it right there and it was never mentioned again. Munroe was then taken on re-direct examination and the following occurred:

(Appellant's counsel): "Now, you say you made the statement about coming through your air conditioner? A. That's right.

"Q. And Mr. Hunter made the statement about smelling it at his house and another juror made a statement about smelling it at his house, all three of those made, and you couldn't remember any others? A. That was only—didn't take a minute.

"Q. Well, I know, but Mr. Hunter didn't promptly then tell you not to consider it after you had been discussing it? It was after you had been discussing it, wasn't it?"

(Appellee's counsel): "We object to him leading his witness.

"The Court: Don't lead the witness."

(Appellant's counsel): "Well, I am cross examining him on a question that he went into.

"The Court: This is not cross examination. This is your witness.

"Q. Well, that's true, isn't it?"

(Appellee's counsel): "Now, that's insisting on an answer to a question that the Court has sustained an objection to.

"The Court: I sustained the objection."

Juror Murphy was asked whether Munroe made a statement in the jury room in his presence about the smell coming through an air conditioner so bad that he had to cut it off, and he answered, "not that I heard." That he did not hear juror Barnard make a statement about what he could smell at his home; that he did not hear the foreman, Mr. Hunter, make any statement in the jury room about what he could smell at his home. Mr. Murphy was asked whether the foreman admonished the jury not to discuss matters of personal knowledge but to confine their discussion to the testimony introduced, to which he answered that the foreman read the charge "in the beginning." The foreman testified, with reference to a question asked him out of court by appellant's counsel about appellant's claim that juror Barnard had said he smelled the odor at his place of business, that he heard the remark but he could not swear who made it and that he had told appellant's counsel out of court that he, the foreman, had told the other jurors he smelled the odor at his home but at that time he did not know what it was. The foreman testified that if Munroe said he smelled the odor at Elliott's Funeral Home and when he turned on the evaporative coolers it brought in the odor so bad that he had to cut them off, he did not hear it. Hunter testified further that the odor was discussed, he "expected," by nearly everybody in the jury room because they had a sample of it, and then some of the jurors would say: "Well, I have smelled that, but I didn't know what it was"; that remarks like that were made but he did not know who made them. The foreman testified that he told the jurors, after they had decided the pit was a nuisance, that the only thing left to decide was the amount of damages and that was the only thing to discuss, "and that is all and we are to decide that on the evidence that we have heard in the court room." He further testified:

"Q. When you heard anything said by anybody that was not dealing with the evidence that was offered from the witness stand did you stop them and say, 'Now, the Court said for us to try this case on the basis of the evidence that we heard from the witness stand'? A. I read the charge three times to them, and I told them that we was to decide that on the evidence that we had heard in here solely, on the preponderance of the evidence. *I told them that before we voted the first time, and fumes and smells hadn't been brought up at that time,* and they all voted, twelve alike on it. (Emphasis ours.)

"Q. Now, then, after that— A. Then when they come up, I said, 'Now, there's no property damage. There's no need to discuss that. There's no property damage asked. It's damage as a nuisance, and we have to answer this question now as we have found it was a nuisance. The thing is to question now—how much we think those people were damaged, and that's all we are here to decide.'

"Q. And did you tell them they were not to consider anything except the evidence? A. I may not have used those words, but I told them we was to decide it on the witnesses and the credibility of the witnesses.

"Q. And that alone? A. Yes, sir.

"Q. And did they? A. Well, in a way, yes, sir."

With reference to the foreman admonishing the jurors, Mr. Barnard further testified:

"Q. Now, you heard this remark in the jury room. What, if anything, did the foreman say to you boys about what you were going to predicate your verdict on, outside stuff or what you heard from the jury box? A. What we heard from the jury box.

"Q. What you heard over there in that jury box. And they had a bottle of that, jug of that stuff here in the court room? A. Yes, sir.

"Q. And you smelled it then? A. That's right.

"Q. And you knew what it was? A. That's right.

"Q. Now, when you went out there and this matter was mentioned, what did the foreman say—did the foreman say anything to you about following the court's charge and the evidence only? A. Well, I don't remember that. I am sure he did.

"Q. Well, do you remember him admonishing you to stick to the evidence? A. Yes, I do.

"Q. He did tell you that, to stay with the evidence that you heard from the witness box and that alone? A. Yes, sir.

"Q. And you did do that? A. Why certainly.

"Q. And the fact you smelled it once before didn't have anything to do with your verdict? A. Not a bit. Not a man in there either, couldn't have."

Juror Sheffield testified he did not remember whether Munroe stated in the jury room that he had to turn off the air conditioner because the smell was so bad; that there was "something said about they could smell it out in the north part of town." Mr. Sheffield was asked with reference to Barnard's statement and he answered: "I

believe he said he could smell it.". He testified:

"Q. Now, what, if anything, did the foreman say to you or say in your presence when this man spoke up and said that he had smelled it; what did he say about the court's charge and how to decide the law? A. Well, he just read the paper there that he had.

"Q. And he said—and it said to try it on the basis of the evidence offered? A. I believe so."

He testified that he believed appellant's counsel asked him and all the other jurors "if they had been down there and smelled that odor and had an opinion to the rights of either party."

The substance of the evidence produced on the motion for a new trial relative to additional evidence presented in the jury room by statements of the jurors consisted of statements that they had smelled the odor that was the basis of this suit at their homes; that it could be smelled in the north part of Abilene and that one of the jurors told the others he could smell the pit at his home "way up" on Cedar Street. The evidence with reference to the juror that lived "way up" on Cedar telling the other jurors that he smelled the pit "way up" there, indicating that he lived a long distance from the pit and, particularly, the testimony of the juror that, at the funeral home where he was employed, "lots of nights" he had to turn off the air conditioners to keep the odor from running him out of the house were certainly improper and constituted misconduct. Such statements constituted strong evidence for plaintiffs and were reasonably calculated to injure appellant. The statement of the juror to his fellows that the odor was so strong that "lots of nights" he had to turn off the air conditioners to keep the odor from running him out of the house appears to us to be as strong and effective, if not more so, than that of any witness who testified for the plaintiffs. He should have been a witness, not a juror. This secret testimony was calculated to impress his fellow jurors

more than if he had testified to the same thing from the witness stand. He was not under oath and defendant had no chance to cross examine him or to attempt to refute his testimony. It concerned the most important question in the case, that is, the strength and foulness of the odor that came from the pit. It was directly pertinent to the only issue not then decided, that is, the amount of damages that should be awarded the Arnolds for having to smell such an odor at their home. Defendant's witnesses had testified that the odor was not very offensive and that the crew that covered the pit ate their lunch around its rim. All of said statements by the jurors were made after the jury had found the pit was a nuisance but before they determined the amount of damages to be awarded the Arnolds for having to smell the odor at their home.

Cases must be tried in the court room. Jurors must not be permitted to become secret witnesses during the jury's deliberation. It is misconduct for original evidence of material facts to be received by the jury during its deliberation. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483. It is not a question of fact as to whether such jury misconduct occurred. It is undisputed. See Crawford v. Detering Co., 150 Tex. 140, 237 S.W.2d 615. Jury misconduct having been conclusively established, the judgment, based on the jury's verdict, must be reversed if the misconduct was material and it reasonably appears from the entire record that injury probably resulted to appellant. R.C.P. 327. The testimony of the jurors that such statements did not affect their verdict was incompetent. We cannot consider it in passing on the question whether the judgment should be reversed on account thereof. Jurors may neither preserve nor destroy their verdict by testifying to their mental processes in reaching a verdict. Traders & General Ins. Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585, 587; Sproles Motor Freight Line v. Long, 140 Tex. 494, 168 S.W.2d 642; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Where misconduct has been established, the question of probable

injury becomes one of law and in determining that question the court will examine the entire record. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259.

In the case last cited, the main issue was whether the operator of a mowing machine which injured a child kept a proper lookout. A statement of a juror during the jury's deliberation, that, based on his experience in operating such a machine, the operator would have seen the child in the weeds if he had been looking was held to constitute misconduct requiring a new trial.

A statement by jurors during their deliberation on the question whether the death of plaintiff's decedent was caused by heat exhaustion that they were acquainted with the operation of stills and refineries similar to that involved and that, from their personal experience, they knew the testimony of defendants' witnesses as to the temperature around the still was incorrect was held to constitute misconduct entitling the defendant to a new trial. Maryland Casualty Co. v. Morua, Tex.Civ.App., 180 S.W.2d 194 (Writ Ref.).

A statement by one juror to others, during deliberation of the jury relative to the failure of defendants to move a truck off the highway, that the testimony of plaintiff's witnesses was "bribed testimony" was held to constitute misconduct which probably injured the plaintiff and entitled him to a new trial. Scoggins v. Curtiss & Taylor, Tex.Civ.App., 219 S.W.2d 451.

Appellee contends the evidence on the motion for a new trial shows the remarks complained of were mere "passing remarks" and that immediately after they were made the jury was admonished by the foreman not to consider such remarks, that they must decide the issues solely from the evidence heard in the jury room and that such remarks were promptly stopped and none were made thereafter and that, thereby, appellant's claim of probable injury was refuted and the necessity of granting a new trial prevented. We have given said contention careful consideration and have made a painstaking search of the record. It is

true the foreman did testify at one place that when the first of said remarks was made he stopped it immediately and it was not mentioned again. Despite such testimony, said foreman testified he told the other jurors he had smelled the odor at his home but he did not know what it was until the sample was introduced during the trial. Another juror testified that one of the jurors told his fellows that he could smell the pit "way up on Cedar"; still another testified in the jury room that he could detect the odor of the pit in the north part of Abilene and in addition thereto, there was the statement of the juror, one of the most damaging bits of evidence in the case, that on "lots of nights" he had to turn off the evaporative coolers at a funeral home where he worked to keep the odor from running him out of the house. After a most careful consideration of the entire record, we conclude that it was established that jury misconduct occurred and that appellant was probably injured thereby, despite such admonition by the foreman. See Burkett v. Slauson, 150 Tex. 69, 237 S.W. 2d 253, 256.

The judgment is reversed and the cause remanded.