**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Loyal Grant PRICE, Jr., Appellee.**

No. 3490.

Court of Civil Appeals of Texas.

Eastland.

April 29, 1960.

Rehearing Denied June 17, 1960.

Morris, Underwood & Oldham, Houston, for appellant.

Jim S. Phelps, Houston, for appellee.

COLLINGS, Justice.

Loyal Grant Price brought suit on January 28, 1958, to set aside an award of the Industrial Accident Board dated January 15, 1958. In December, 1958, at the time of trial, plaintiff filed a second amended original petition seeking to set aside such award and also to set aside another award dated August 11, 1958. The defendant Texas Employers' Insurance Association answered by general denial and specifically pleaded that plaintiff's alleged injury did not result in total or permanent incapacity, but that any injury plaintiff may have received resulted only in partial and temporary incapacity, or resulted from other injuries and diseases or a combination thereof. The defendant also denied under oath that plaintiff gave notice of his injury within the time required by law.

The case was tried before a jury which found that plaintiff received an accidental injury while working for the Port Houston Iron Works, Inc.; that such injury occurred on October 15, 1957; that such in-

jury was the producing cause of total disability; that total disability began November 27, 1957; that such disability was permanent and was not partial; that failure to pay compensation in a lump sum would cause manifest hardship and injustice to plaintiff; that defendant had notice of the injuries sustained by plaintiff; that after having such notice defendant failed to furnish medical and hospital services within a reasonable time; that an expense of $967.25 was reasonably and necessarily incurred by the plaintiff as a result of his injuries. Other issues were not answered by the jury because of instructions in the charge. Judgment was entered for the plaintiff for $13,415.96 in a lump sum with interest thereon at the legal rate. The defendant filed motions for judgment non obstante veredicto, for new trial and an amended motion for new trial which were timely submitted to the court and overruled. Texas Employers' Insurance Association has appealed, attacking the jurisdiction of the trial court, the amount of the verdict as greatly exceeding the amount authorized by the undisputed evidence, the failure of the court to submit material issues of fact, and prejudicial jury misconduct.

■ Appellee's petition contained the following allegation: "Plaintiff further alleges that plaintiff is legally entitled to file and maintain this suit in this court because prior to the filing of this suit plaintiff has fully complied with all requirements of Texas Workmen's Compensation Act." Appellant contends in point number 5 that the above quoted language does not amount to an allegation that appellee gave notice of injury, filed claim for compensation and gave notice of intention not to abide by the award; that appellant was therefore not required to deny the existence of such facts under oath, and that since appellee did not establish same, as required by Article 8307, Sections 4a and 5, Vernon's Ann.Texas Civ.St., the trial court had no jurisdiction to try the case. We cannot agree with this contention. Appellee

alleged compliance with "all requirements of the Texas Workmen's Compensation Act." This constituted a general allegation of compliance with the specific steps required by the act. Such facts, concerning which appellant made no verified denial, are presumed to be true as pleaded. Rule 93(n), T.R.C.P. Actually the allegation was the pleading of legal conclusions. The pleading of a legal conclusion is permitted if the pleader's adversary is not mislead thereby. Rule 45, V.T.R.C.P.; Hankey v. Employers' Casualty Co., Tex. Civ.App., 176 S.W.2d 357; Clary & Sons Plumbing and Heating v. Local Trademarks, Tex.Civ.App., 250 S.W.2d 916; Alexander v. Byrd, Tex.Civ.App., 309 S.W. 2d 952. Particularly is this true in the absence of special exceptions to the pleading. Greenfeld v. San Jacinto Insurance Co., Tex.Civ.App., 319 S.W.2d 134; Heaton v. Bristol, Tex.Civ.App., 317 S.W.2d 86 (Writ Ref.); Blackstock v. Gribble, Tex.Civ.App., 312 S.W.2d 289 (Ref. N.R.E.). The jurisdictional requirements of the Texas Workmen's Compensation Act are so well known to the bar of this state that we have no apprehension of an adversary insurance company being mislead by a general allegation such as the one here involved.

■■ As an alternative to point number 5 it is contended by appellant in its point number 6 that the trial court had no jurisdiction to try the case because appellee Price failed to establish by proof and jury findings that he gave notice of his injury, or that his employers had notice thereof within 30 days after it occurred, when appellant had by sworn pleading alleged that no such notice was given or received. There was ample evidence to the effect that on the day appellee was knocked off a scaffold and received the injuries complained of, both Mr. Gary, the superintendent, or yard foreman, on the job for appellee's employer, and Mr. Jackson, appellee's immediate supervisor, had actual notice that appellee was injured. Appellee testified that he reported his injury to such representatives of his employer on the same

day that he was injured. There is a conflict in the testimony as to the nature of the accidental injury received by appellant and when it occurred, but the accident for which appellee seeks to recover described by the testimony of appellee and his witnesses and that described by appellee's immediate supervisor, Mr. Jackson, are obviously one and the same. It was the accidental injury which occurred when appellee was working for his employer Port Houston Iron Works as a boiler maker on a scaffold about six feet high, putting the knuckleplate on a barge, and was hit on the forehead with a sledge hammer when it bounced back and struck him. Appellee and other witnesses say that when he was hit with the hammer he fell off the scaffold. The jury found that appellee received this injury on October 15, 1957. The jury found that appellant had notice of such accidental injury. There was ample evidence showing that appellee's employer did have notice of such injury on the same day that it occurred through Mr. Jackson and Mr. Gary. The evidence was to the effect that such notice was given on the same day the injury occurred which was obviously within the required time limit. It is held that timely notice to a foreman on the job is sufficient notice to the employer and to the insurer. Aetna Life Ins. Co. v. Harris, Tex.Civ.App., 83 S.W. 2d 1087; Texas Indemnity Insurance Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915 (Ref. W.O.M.). Appellant's point number six is overruled.

In appellant's first four points it is contended that there was no evidence, and in the alternative that the evidence was insufficient to support the findings that any total incapacity sustained by appellee was permanent and the finding that appellee sustained total and permanent incapacity was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Appellant also contends that there was no evidence to support the finding that appellee did not sustain a partial incapacity following his injury. The evidence bearing upon the extent and duration of appellee's incapacity came from appellee and his witness, Dr. Harold J. Brelsford. Appellee Price testified that he was 30 years of age, was a welder and fitter by trade and had worked for Port Houston Iron Works about eight months during 1957. He testified that on October 15th or 16th, 1957, while he was working on a scaffold and hammering a wedge for his employer the sledge hammer bounced back and hit him in the face, bruising him and causing him to fall off the scaffold some six or seven feet to the ground below and that as a result of the fall his back was hurt. Appellee testified that after being taken to an aid station and receiving treatment of his mouth and nose, which had been hit by the hammer, he resumed work for the rest of the day but was given an easier job, and that he told Mr. Jackson at the time that his back was hurting. He continued work for his employer on his regular job until November 7, 1957, when he was laid off. He testified that during this time his back hurt him increasingly but he thought he would get better and did not thereafter mention his back trouble to anyone connected with his employer. After being laid off on November 7, 1957, appellee was without work one day and on November 8, 1957, began work as a welder for Wilson Foundry and Machine Works. He continued to work until he went to see Dr. Harold J. Brelsford on November 27, 1957. He remained under the doctor's care thereafter and on January 20, 1958, he had an appreciable change for the worse. On January 27, 1958, he was having severe pain in his left leg and was unable to do any kind of work. On January 28, 1958, appellee was placed in a hospital where he remained until February 3, 1958, when Dr. Brelsford performed a laminectomy which confirmed the doctor's diagnosis that appellee had a herniated disc. The doctor testified that the operation was a major one; that he removed slightly less than one-fourth of the injured disc and that appellee continued in the hospital until he was discharged on February 8, 1958. Appellee testified that

his back felt good the first week or two after the operation but that might have been because he was still under the influence of medicine and had not started moving or walking around. He stated that after that his back began to get worse again. On about April 1, 1958, appellee went back to work at Wilson Foundry and Machine Works and worked until May 15, when he was laid off. After about a week he got another welding job with Sweco where he took and passed a medical examination and worked until about October 15, 1958, when he again lost his job because of lack of work. Appellant contends that the evidence raises an issue of no more than eight weeks total disability.

Appellee testified that the work at Wilson's was not as hard as it was at Port Houston Iron Works, and that while he was working at Wilson's he was suffering pain and continued to work only because he had lots of bills to pay and had to work. He testified that a while after he started back to work on April 1, 1958, he saw the doctor every two weeks and after a time began seeing him only once a month; that about a couple of months before the trial his back began to hurt so badly that he could hardly stand it. After that he began seeing the doctor every week or week and a half. Appellee stated that his back was getting worse; that he was having to wear a brace; that he could do no lifting; that he was afraid to take the chance, that it hurt badly enough without trying to lift; that one could not be a welder or fitter without lifting. He stated that he was having pain in his legs; that it started around his waist and went down; that it was in both legs; but more in the left than the right, and that he had a numbness in his left foot. He testified that at the time of trial he could not get and hold a job of welding and fitting; that he couldn't pass the physical examination because he couldn't stoop over far enough; that he couldn't strain like he used to; that every time he tried to bend over it was like putting a knife in him.

In our opinion there is ample evidence of probative force to support the finding that appellee sustained total and permanent incapacity by reason of his injury. We also hold that such finding is not against the great weight and preponderance of the evidence under the rule laid down in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. The fact that appellee continued to work and earn money after his injury, even though he was suffering pain when he did so, not because he was able to work, but because of economic necessity to earn money and pay his bills, is not a bar to recovery of total and permanent disability. Texas State Highway Department v. Kinsler, Tex.Civ.App., 230 S.W.2d 364 (Writ Ref.); Texas Employers' Insurance Ass'n v. Evers, Tex.Civ.App., 242 S.W.2d 906 (Ref. N.R.E.).

In support of its contention in this respect, appellant further urges that appellee's own doctor testified that his back had been improved by the operation and stated that he "would estimate his (appellee's) partial permanent disability as approximately twenty· percent as applied to general deficiency." This testimony is not consistent with the finding of the jury and the testimony of appellee to the effect that he has sustained total and permanent incapacity. It is the province of the jury, however, to determine the weight to be given evidence and to reconcile conflicts or inconsistencies therein. 17 Tex.Jur. 408. The matter under consideration was not one for experts and skilled witnesses alone. Appellee testified that he could not work without pain, that his back was getting worse, that he was having to wear a brace with which he had previously been fitted by Dr. Brelsford. Dr. Brelsford testified that appellee had sustained permanent incapacity although not total, but that he would not pass him to follow his trade. The fact that appellee's testimony was in conflict with expert opinion testimony concerning the extent of his disability did not, under the circumstances, render it insufficient to support the verdict. Coxson v.

Atlanta Life Insurance Co., 142 Tex. 544, 179 S.W.2d 943; Associated Employers' Lloyds v. Self, 192 S.W.2d 902 (Ref. N.R.E.); Universal Life & Accident Insurance Co. v. Burden, Tex.Civ.App., 294 S.W.2d 855.

■ It was found by the jury in answer to special issue number 7 that appellee did not suffer any partial incapacity as a result of the injury sustained by him. Conditioned on a finding of partial incapacity, special issue number 11 inquired whether appellee would during the period of his partial incapacity, if any, suffer a loss in his earning capacity, and special issue number 12 inquired concerning the percentage, if any, of such loss, if any, in earning capacity. Because of the finding that appellee did not suffer any partial incapacity, the jury did not answer special issues numbers 11 and 12. Appellant's point number 7 complains of the action of the court in refusing to submit its requested special issue number D which inquired concerning the wage earning capacity of appellee subsequent to his injury. It was agreed by the parties that his earnings before the injury amounted to $110.00 per week. Appellant urges that his requested special issue number D was the proper manner to submit the extent of partial incapacity in general injury cases under Article 8306, Section 11, V.A.C.S., as amended by the legislature effective September 1, 1957, and that such amended statute further provided that compensation for such partial incapacity should "not be computed on the basis of percentage of disability." The error complained of was not reversible error, but was harmless in view of the finding that appellee did not suffer any partial incapacity. Rule 434, V.T.R.C.P.; Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111; Cloud v. Zellers, Tex., 309 S.W.2d 806.

■ Appellant further urges that the court erred in refusing to grant a new trial on the ground of jury misconduct. The evidence concerning some of the alleged jury misconduct was conflicting and would support a finding that such misconduct did not occur. The implied findings of the court in support of the order overruling appellant's motion for a new trial, which findings have support in the evidence, are binding on us. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Texas Employers' Insurance Ass'n v. Chocolate Shop, Inc., Com.App., 44 S.W.2d 989; Bowles v. Penny, 295 S.W.2d 291 (Ref. N.R.E.); Texas Employers' Insurance Ass'n v. Layton, Tex.Civ.App., 278 S.W.2d 453.

■ The existence of one of the alleged acts of jury misconduct is shown conclusively and in our opinion constitutes reversible error. The question whether the incapacity of appellee was total and permanent or only permanent partial was close, as already indicated. It is our opinion that the evidence supports the finding of total permanent incapacity and that such finding is not against the great weight and preponderance of the evidence. But it is further noted that appellee's own doctor testified, in effect, that his disability was approximately twenty percent partial. It is undisputed that one of the jurors related his personal experiences to persuade the jury that appellee was totally and permanently incapacitated. The witness stated to the jury as follows:

"I said it has been my experience that in employment that if a man has an injury and it is obvious, such as, a scar on his back if he is being examined by a doctor for employment that he would want a statement from that man concerning that injury, and if he mentioned a back injury I doubted very much if he would get employment. The reason that came out was we were discussing whether or not the injury was partial or total."

The juror testified that he got this experience in union work; that he had read a letter from his company concerning back injuries showing that the company wanted

to be more careful in hiring people with such injuries and that he told the jury about this experience. He testified that, in making the above statements to the jury, he was attempting to persuade a juror to come over to his side of the case; that he felt it was proper to give the jury the benefit of his personal knowledge and experience; and that was what he did. He further stated that he knew from experience that appellee could not get a job with Rohm and Haas, Shell Oil Company, Sinclair, or any other company that has a union contract or employee benefits and so advised the jury. He stated his opinion to the jury that appellee should receive total and permanent disability because he could not pass the physical examination he would be required to take; that it had been his experience that companies were very strict about whom they hire and that prospective employees were required to pass a most rigid physical examination. In this connection the juror testified that he also stated to the jury that there might be some jobs that appellee could handle but that he had a doubt whether appellee "could compete favorably on the labor market." The above evidence is undisputed. It shows that a juror related his personal experiences to the jury concerning the practice of company employers in hiring and employing workmen, and that the purpose and effect of such statements was to show that appellee was totally incapacitated. It was misconduct for the juror to relate to the other jurors his own personal experience as original evidence of material facts to be considered in their deliberation. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R.2d 1028. Considered in connection with the entire record, we are of the opinion that the misconduct shown was material and that it reasonably appears that injury probably resulted to appellant. Such misconduct constitutes reversible error. Rule 327, T.R.C.P.; Burkett v. Slauson, 150 Tex. 69, 237 S.W.2d 253; Western Cottonoil Co. v. Arnold, Tex.Civ.App., 279 S.W.2d 374; Travelers Insurance Co. v. Carter, Tex.Civ.App., 298 S.W.2d 231 (Ref.

N.R.E.); Central Power & Light Co. v. Butler, Tex.Civ.App., 311 S.W.2d 871.

For the reasons stated the judgment of the trial court is reversed and the cause is remanded.